MICHAEL JAREK'S CASE.

Suffolk.    March 7, 1950. — June 30, 1950.

Present: QUA, C.J., LUMMUS, RONAN, & COUNIHAN, JJ.

*Workmen's Compensation Act,* Injuries to which act applies, Street risk. *Agency,* Scope of authority or employment.

Evidence in a workmen's compensation case, that the employee, after consenting to work late on a certain evening upon being asked to do so by his foreman, requested of and received from the foreman permission to go to his nearby home to tell his wife that he would be late that evening, and that he slipped and fell and was injured while walking in the street on his way home, did not warrant a finding that he was injured while "actually engaged . . . in the business affairs or undertakings of his employer" within the provision of G. L. (Ter. Ed.) c. 152, § 26, as appearing in St. 1943, c. 529, § 8, relating to ordinary risks of the street; nor was the provision of said § 26 relating to one "ordered . . . to perform work which is not in the usual course of . . . [his] occupation" applicable.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board awarding compensation under the workmen's compensation act.

A decree dismissing the claim was entered by order of *Giles,* J., and the claimant appealed.

*J. Bear,* for the claimant.

*P. S. Ratzkoff,* for the insurer.

QUA, C.J.   On the evidence most favorable to the employee these facts could be found: He worked as a porter and general utility man.   His hours were from eight to five.

About two o'clock in the afternoon of a March day in 1946 his foreman told him that he wanted him to stay until the place closed at 5:30 because the foreman had to go out "to the dentist or somewhere." The employee said "all right." He asked the foreman if he could go out and tell his wife that he was coming home late. He wanted to tell her because she was nervous and sick and would be worried if he was a half hour late. The foreman said that was "absolutely all right, so with . . . [his foreman's] permission he went out." He lived at a distance of five or six minutes walk. After he had walked a hundred feet or more on the street he slipped and fell and was seriously injured.

The applicable statutory provision is found in G. L. (Ter. Ed.) c. 152, § 26, as appearing in St. 1943, c. 529, § 8, and so far as material reads as follows: "If an employee . . . receives a personal injury arising out of and in the course of his employment, or arising out of an ordinary risk of the street while actually engaged, with his employer's authorization, in the business affairs or undertakings of his employer, . . . he shall be paid compensation . . ., as hereinafter provided . . .." This statute affords to the injured employee two alternatives, within one or the other of which he must bring himself. *Harvey's Case*, 295 Mass. 300, 303–304. The board found in favor of the employee under the second alternative, that is, where the injury arises "out of an ordinary risk of the street," as the injury in this case obviously did. *Harvey's Case*, 295 Mass. 300, 304, and cases cited. *Smith's Case, ante,* 160, 162. The Superior Court dismissed the claim and the employee appealed.

The fundamental difficulty which we have in supporting the conclusion reached by the board is that we are unable to discover that the other words of the statute applicable to this alternative, "while actually engaged . . . in the business affairs or undertakings of his employer" have been satisfied. The only "affairs or undertakings" in which the employee was "actually engaged" when injured were the trip home to tell his wife that he would be late that night. It would stretch the words of the statute beyond the break-

ing point to hold this to have been part of the "affairs or undertakings" of the employer. So far as appears the trip was made entirely because the employee wished to make it. The employer consented, but had no interest in the trip and derived no advantage from it. The suggestion that the employee made it a condition of his staying late that he must first be allowed to go home to tell his wife, if that would make any difference, which we do not intimate, is not borne out by the evidence. From the employee's own testimony it would seem that he consented to stay late as soon as he was asked and then simply requested permission to go home and tell his wife. At least there is nothing to show that this was not so. In our opinion the employee's trip home to tell his wife was no more a part of the "business affairs or undertakings of his employer" than was the employee's trip to the street to look after his own automobile in *Levin* v. *Twin Tanners, Inc.* 318 Mass. 13, 17. See *Smith's Case, ante,* 160.

The further provision of § 26 that "any person who, while engaged in the usual course of his trade, business, profession or occupation, is ordered by an employer, or by a person exercising superintendence on behalf of such employer, to perform work which is not in the usual course of such work, trade, business, profession or occupation, and while so performing such work, receives a personal injury, shall be conclusively presumed to be an employee" has no application to this case. One reason is that the employee was not ordered to visit his wife.

*Decree affirmed.*